# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PETER GAKUBA, #M52946,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18−cv−1065−NJR |
| ) | |
| **JOHN DOE 1,** ) | |
| **JOHN DOE 2,** ) | |
| **MR. KNIGHT, and** ) | |
| **JOHN/JANE DOES,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Peter Gakuba, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated in East Moline Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Robinson Correctional Center ("Robinson"). In his Complaint, Plaintiff claims the defendants deprived him of kosher meals in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc−1(a). (Doc. 1).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

>  (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>  (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff, "a mulatto Jew," completed the forms to receive kosher meals while in prison in 2015. (Doc. 1, p. 4). Plaintiff's kosher meal request was denied in September 2015 by John Doe 1, the IDOC's Chief Chaplain. *Id.* Plaintiff questions the rationale for the denial. *Id.* He did not cite to religious verse or scripture in his application, pursuant to an IDOC policy. *Id.* Plaintiff discussed the denial with Robinson's Chaplain, who told Plaintiff the Chief Chaplain was the final decision maker. *Id.* Plaintiff "was the only known Jew at Robinson." *Id.*

In March 2016, Tomas Gonzales met Plaintiff over the Passover holiday and gave him a Torah and other religious material. *Id.* Plaintiff used this material when he reapplied for kosher meals by citing verses and scripture in support of his request. *Id.* His request was then approved by the Chief Chaplain, John Doe 1. *Id.* Per the approval, John Doe 2 (the warden), Robinson's Chaplain, and Dietary Supervisor Knight signed off on kosher meals, which would start May 7, 2016. *Id.* On May 7, Plaintiff began receiving kosher meals, which were "pre-packaged, vacuum sealed, TV dinner like trays akin to canned soup." *Id.* These kosher, or Hebrew, trays were served 1-2 times per day in May 2016 and several times per week in June 2016 before stopping altogether. *Id.* Plaintiff complained and wrote grievances to no avail. *Id.* The response to his complaints was that the "Hebrew trays cost $7-14 each and state budgetary

problems precluded this expenditure." *Id.* In September 2016, the Hebrew trays resumed intermittently. *Id.* From about February to June 2017, they stopped altogether, and later they resumed, but intermittently and sparingly once again. *Id.*

When Robinson was not serving Hebrew trays, it served non-kosher food, including scrambled eggs, canned food (including diced fruits, vegetables, and tuna), Kool-Aid, peanut butter and jelly, grilled cheese sandwiches, French toast, and cereal. *Id.* These "were continual violations of their [duty] to meet [Plaintiff's] religious meal requirements." *Id.* They also "failed to meet their stated 'Nutritious 2000 calorie per day' mandate." *Id.* Plaintiff's cholesterol increased from 120 to 175 in response to this diet, and he developed irritable bowel syndrome. *Id.* Plaintiff also could not afford the food in the commissary. *Id.*

Another prisoner was approved for kosher meals in summer 2016 by requesting them and falsely claiming he was Jewish when in fact he is Christian. *Id.* This inmate is white. *Id.*

On October 18, 2017, Plaintiff was transferred to East Moline Correctional Center, where he encountered problems similar to those at Robinson. *Id.* In response to his verbal and written grievances, East Moline prison administrators and staff "conspired to retaliate and discriminate" against him. *Id.* Plaintiff has a lawsuit pending related to these issues in East Moline. *Id.*

Plaintiff requests monetary damages from the defendants. (Doc. 1, p. 6). In the list of defendants, he describes John Doe 1 as the "Chief Chaplain for IDOC who approves/denies Jewish kosher meals (2015-2017)." (Doc. 1, p. 1). John Doe 2 is listed as the warden from 2015-2017 at Robinson, "who approves/denies Jewish kosher meals at institutional level." (Doc. 1, p. 2). Mr. Knight is described as the dietary supervisor at Robinson, and John/Jane Does are described as the dietary staff at Robinson. *Id.*

## Discussion

Before analyzing Plaintiff's allegations, the Court finds it appropriate to address Plaintiff's failure to include specific allegations against Defendants John/Jane Does in the body of his Complaint, despite his having listed them among the defendants. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can

3

properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him or her. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, John/Jane Does will be dismissed from this action without prejudice.

Moving to the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into three counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Defendants initially denied Plaintiff a kosher diet, and then only provided one to him intermittently, in violation of the Free Exercise Clause of the First Amendment and RLUIPA.
>
> **Count 2 –** Defendants subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment by failing to provide him with a nutritionally adequate diet.
>
> **Count 3 –** Defendants denied Plaintiff the equal protection of the law guaranteed under the Fourteenth Amendment by granting a non-Jewish white inmate's request for kosher meals in the summer of 2016 after Plaintiff, who is Jewish and "mulatto," was initially denied kosher meals in September 2015.

As discussed in more detail below, Count 1 will be allowed to proceed. Counts 2 and 3 will be dismissed for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – First Amendment and RLUIPA

The Free Exercise Clause of the First Amendment forbids prison officials from imposing a substantial burden on the free exercise of religion, unless the burden is reasonably related to a legitimate penological interest. *Kaufamn v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). RLUIPA offers broader protections than the First Amendment. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). It applies

to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It offers broad protection to institutionalized persons by prohibiting substantial burdens on religious exercise. § 2000cc-3(g). This protection extends to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).

Denying a kosher diet to a Jewish prisoner may constitute a substantial burden on the prisoner's religious exercise. *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) ("Given the strong significance of keeping kosher in the Jewish faith, the TDCJ's policy of not providing kosher food may be deemed to work a substantial burden upon Baranowski's practice of his faith"). That being said, security and economic concerns are compelling governmental interests, so if providing kosher meals presents a substantial budgetary problem, then a prison can deny such meals. *Baranowski v. Hart*, 486 F.3d at 125-126. Plaintiff was told "state budgetary problems" and the high cost of the kosher meals precluded the prison from providing them to him consistently. This suggests a compelling government interest in denying Plaintiff the meals, but it is the defendants' burden to present evidence to that effect and is not grounds for dismissal of Count 1 at this stage.

Plaintiff's allegations and defendant descriptions suggest that John Doe 1, the Chief Chaplain, and John Doe 2, the warden, were at fault for denying him kosher meals, whether it was when he was initially denied them in 2015 or after he was approved for the meals but was only provided them intermittently. Plaintiff fails to implicate Knight, however, as he only claims that Knight initially signed off on the kosher meals and was the dietary supervisor. There is no indication that Knight was responsible for denying Plaintiff kosher meals.

Accordingly, Count 1 will proceed against John Doe 1 and John Doe 2 and will be dismissed without prejudice as against Knight.

### Count 2 – Conditions of Confinement

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's

necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

A deprivation of a basic human need—food, medical care, sanitation, or physical safety—is necessary to establish the objective component of unconstitutional conditions of confinement claims. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Specifically relevant to this case, the Constitution mandates that prison officials provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). Further, the Seventh Circuit has held that seemingly conclusory allegations claiming prison food "is well below nutritional value" or that inmates are served a "nutritionally deficient diet" are enough to satisfy the objective component of a claim for deliberate indifference. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)).

To survive preliminary review, the Complaint also must satisfy the subjective requirement by suggesting that the defendants exhibited deliberate indifference to the conditions of Plaintiff's confinement by causing or participating in the alleged constitutional deprivations. *See Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). A plaintiff may not attribute any of his constitutional claims to a high-ranking official by relying on the doctrine of *respondeat superior*, or vicarious liability; "the official must actually have participated in the constitutional wrongdoing." *Antonelli*, 81 F.3d at 1428 (citing *Cygnar v. City of Chicago*, 865 F.2d 827, 947 (7th Cir. 1989)). Plaintiff's allegations regarding the nutritional value of the food provided may satisfy the objective requirement of his claim at this stage, but he has failed to satisfy the subjective standard.

Plaintiff has not adequately alleged that any of the defendants knowingly denied him adequate nutrition. He does not claim he alerted any of them to the issue, or that they otherwise knew the food being served was below nutritional standards but served it anyway. Because the allegations do not support

a claim of deliberate indifference against any of the defendants, Count 2 will be dismissed without prejudice.

### Count 3 – Equal Protection

The Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "All equal protection claims...are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (citations omitted). To state an equal protection claim, a plaintiff must establish that a state actor treated him differently from others similarly situated because of his membership in a particular class and that the state actor did so purposefully. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (citing *Washington v. Davis*, 426 U.S. 229, 239-42 (1976)). Discriminatory purpose "implies that the decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (citation omitted).

Count 3 presents an equal protection claim under the Fourteenth Amendment based on the perceived different treatment afforded Plaintiff, who is "mulatto," and another inmate, who is white, in that Plaintiff's initial request for kosher meals was denied, whereas the white inmate's request was granted. In the Complaint, Plaintiff does not claim that the initial denial of his kosher meal request, or the approval of the white inmate's request, was based on their respective races. Plaintiff also does not allege that anyone knew the white inmate who was approved for kosher meals was not Jewish, or even that he was white. Plaintiff was also eventually approved for a kosher diet, before or around the time the white inmate was approved in summer 2016. Without any real indication that Plaintiff was treated differently by any of the defendants based on his race, or another identifiable group he belongs to, Plaintiff's equal protection claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 1 against Defendants John Doe 1 and John Doe 2. These defendants must be identified with particularity, however, before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain their identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden of Robinson will be added as a defendant, in his or her official capacity only, and he or she shall be responsible for responding to discovery (formal or otherwise) aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Defendants John Doe 1 and John Doe 2 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Disposition

The Clerk of Court is **DIRECTED** to add the **WARDEN OF ROBINSON** (official capacity only) as a defendant to this action in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **JOHN DOE 1** and **JOHN DOE 2**. It is **DISMISSED** without prejudice against all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** without prejudice against each of the defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** without prejudice against each of the defendants for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Defendants **KNIGHT** and **JOHN/JANE DOES** are dismissed from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for Defendants **WARDEN OF ROBINSON** (official capacity only), **JOHN DOE 1** (once identified), and **JOHN DOE 2** (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and

(2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE 1** and **JOHN DOE 2** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendants with particularity. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court

and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 17, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**