IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PETER GAKUBA,** | |
| Plaintiff, | |
| v. | Case No. 3:18-CV-01065-NJR |
| **STEPHEN KEIM, DAVID RAINS, and DEE DEE BROOKHART,** | |
| Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Peter Gakuba was an inmate of the Illinois Department of Corrections ("IDOC") from July 2015 until April 2021. While in IDOC custody, Gakuba claims he was, at times, denied kosher meals. The lack of kosher meals allegedly rendered Gakuba's diet noncompliant with his Jewish faith. Gakuba filed a complaint under 42 U.S.C. § 1983, alleging violations of his federal constitutional and statutory rights. Defendants, the acting wardens and chief chaplain of the prison where Gakuba was held, have moved for summary judgment on Gakuba's two remaining claims, which arise under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 *et seq.*

### BACKGROUND

Gakuba arrived at Robinson Correctional Center ("Robinson") in Robinson, Illinois, in July 2015. Def. Stmt. of Mat. Facts ("SOF) at ¶ 1, (Doc. 133). On August 2, 2015, Gakuba submitted his first request for a kosher diet. *Id.* ¶ 3. The request form required

an inmate to provide a "[j]ustification or basis" for a religious diet request, such as "documentation from [a] religious textbook or faith leader, teaching of [a] faith leader, [or] interpretation of [a] holy book." Def. Exh. B, (Doc. 133-2). Gakuba stated that "[a] kosher diet is axiomatic to Judaism" but offered no other faith-based reason for the request. *Id.* Defendant Stephen Keim, the Chief Chaplain at Robinson, recommended that Gakuba's request be denied because he failed to "provide any examples . . . and omit[ted] the specific requirements of [the requested] diet." *Id.* On August 5, 2015, the warden formally denied Gakuba's kosher meal request. *Id.* The record reveals no evidence of a grievance or administrative appeal by Gakuba to contest this decision.

On May 13, 2016, Gakuba submitted a second request for a kosher diet. Def. SOF ¶ 5. This request was approved, although he alleges that he only received kosher meals "intermittently" after that. *Id.*; (Doc. 1). At some point after his second request was approved, Gakuba was transferred to East Moline Correctional Center ("East Moline") in East Moline, Illinois. Def. SOF ¶ 6. At East Moline, Gakuba was "dismayed" to learn that the approval of his kosher diet did not transfer over with him. *Id.* At his deposition, he criticized what he considered to be unsanitary conditions in the kitchen at East Moline and stated that he was "not going to die in prison from food poisoning or some other ailments, so please get the kosher meal plan approved." *Id.*

Gakuba was eventually approved for kosher meals at East Moline, although it is unclear when his access to kosher meals was restored. On January 16, 2018, Gakuba filed a grievance in which he complained of having been kicked off a kosher diet and requested a "no seafood diet" as a substitute. *Id.* ¶ 7. Gakuba's grievance was denied on January 23,

2018, because he had been observed eating non-kosher food on at least three occasions. *Id.* ¶ 8.

On May 4, 2018, Gakuba filed a lawsuit against Dee Dee Brookhart and David Rains, the acting wardens of Robinson, as well as Chief Chaplain Keim. (Docs. 1 & 18). Gakuba seeks only monetary damages, not injunctive relief. (Doc. 1). This Court's merits review of the complaint allowed the following claim to advance to discovery:

- **Count I:** Defendants initially denied Plaintiff a kosher diet, and then only provided one to him intermittently, in violation of the Free Exercise Clause of the First Amendment and RLUIPA.[1]

(Doc. 6). On January 29, 2020, the Court stayed the proceedings in this case, pending the resolution of Gakuba's habeas case. (Doc. 73). On February 14, 2023, the Court lifted the stay after the Seventh Circuit ruled on his appeal in the habeas case. (Doc. 114). On December 1, 2023, Defendants filed the pending motion for summary judgment. (Doc. 133). Because he is a restricted filer, Gakuba has not submitted a response to the summary judgment motion.

## LEGAL STANDARD

Summary judgment is proper if the moving party can demonstrate, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and that, as a result, they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d

---

[1] Although these claims were approved collectively as "Count I," the Court will address the RLUIPA and First Amendment claims separately for the sake of analytical clarity.

603, 607 (7th Cir. 2005). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it might affect the outcome of a suit under the relevant substantive law. *Ruffin-Thompkins*, 422 F.3d at 607.

To determine if a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). But even so, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (internal citation omitted).

The moving party bears the burden of establishing that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 842 (7th Cir. 2004). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *Celotex Corp.*, 477 U.S. at 322-24.

## DISCUSSION

As a threshold matter, it is unclear whether Gakuba has sued Defendants in their official or individual capacities. The complaint alleges that Defendants denied Gakuba's kosher meal request and seeks monetary damages to compensate him for his injury.

Gakuba does not name an institutional defendant, nor does he identify an official policy or custom that caused his alleged injury. As the Court observed in its merits review order, "Plaintiff's allegations and defendant descriptions suggest that John Doe 1, the Chief Chaplain, and John Doe 2, the warden, were at fault for denying him kosher meals, whether it was when he was initially denied them in 2015 or after he was approved for the meals but was only provided them intermittently." (Doc. 6). The thrust of Gakuba's claims is thus that he was injured by the wrongful conduct of the individual Defendants.[2]

On this reading of Gakuba's complaint, his claims under RLUIPA and the First Amendment are properly construed as individual capacity claims. "Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity." *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). The nature of the plaintiff's claims resolves any ambiguity as to whether a defendant is sued in his official or individual capacity. *Id.* Here, Gakuba's claims directly target the conduct of the three named Defendants, rather than an official policy or custom. Thus, Gakuba's claims under RLUIPA and the First Amendment will be construed as individual capacity claims against the named Defendants.

---

[2] Defendants have argued that Gakuba has offered no evidence of their personal involvement in the denial of his kosher meal request. Although the evidence is sparse, the record suggests that Chief Chaplain Keim screened religious diet requests and, upon review, recommended a course of action. The warden then made a final decision whether to approve or deny the request. Def. Exh. B, (Doc. 133-2). Thus, Gakuba appears to assign liability to the individuals who were involved in the decision to deny his kosher meal request.

1. RLUIPA

Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA provides "expansive protection for religious liberty," if the "prisoner's request for an accommodation [is] sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 358, 360-61 (2015). And to ensure that these protections are honored, the statute provides a private right of action for detainees to obtain "appropriate relief" from the government in case of a violation. 42 U.S.C. § 2000cc-2(a).

Notwithstanding these expansive protections, Gakuba's RLUIPA claim is a legal non-starter. As noted, he seeks only monetary damages from Defendants in their individual capacities. Such suits are not within the scope of RLUIPA's provision of "appropriate relief" because "[c]onstruing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause." *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009), *abrogation on other grounds recognized by Jones v. Carter*, 915 F.3d 1147, 1149 (7th Cir. 2019). The Seventh Circuit has thus taken the position that RLUIPA "does not create a cause of action against state employees in their personal capacity." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (citing *Nelson*, 570 F.3d at 889); *see also Walker v. Baldwin*, 74 F.4th 878, 883 (7th Cir. 2023) ("We have expressed

skepticism regarding whether Congress has the constitutional authority to authorize RLUIPA claims against state officials in their individual capacities."). Other circuits have reached the same conclusion and rejected individual capacity suits for damages under RLUIPA. *See id.* at 881 n.1 (collecting cases and finding that "[e]very federal circuit court that has addressed whether RLUIPA authorizes money damages against state officials in their individual capacities has held that it does not."); *cf. Sossamon v. Texas*, 563 U.S. 277, 286-88 (2011) (holding that grant of "appropriate relief" does not include monetary damages against states). By seeking monetary damages—and only monetary damages—under RLUIPA against Defendants in their individual capacities, Gakuba advances a claim that does not exist. For that reason, summary judgment is appropriate as to his RLUIPA claim.[3]

2. First Amendment

It is well-settled that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). This means that prisoners retain the right to freely exercise their religion, even though the right is "subject to limits appropriate to the nature of prison life." *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). To accommodate these competing interests, a First Amendment Free Exercise claim demands evidence that the defendant "personally and unjustifiably placed a substantial burden on [the plaintiff's] religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016).

---

[3] Gakuba would fare no better if his RLUIPA claim was construed as an official capacity claim. Such claims for monetary damages are barred by the state's sovereign immunity. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Defendants have raised the doctrine of qualified immunity as an affirmative defense to Gakuba's First Amendment claim. "Qualified immunity is an individual defense available to each individual defendant in his individual capacity." *Est. of Williams by Rose v. Cline*, 902 F.3d 643, 651 (7th Cir. 2019) (quoting *Bakalis v. Golembeski*, 35 F.3d 318, 326-27 (7th Cir. 1994)). "A state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Kemp v. Liebel*, 877 F.3d 346, 350–51 (7th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "In order to avoid unnecessary litigation of constitutional issues and expending scarce judicial resources that ultimately do not impact the outcome of the case, courts may analyze the "clearly established" prong without first considering whether the alleged constitutional right was violated." *Reed v. Palmer*, 906 F.3d 540, 546-47 (7th Cir. 2018) (cleaned up). That is what the Court will do here.

"To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right, and existing precedent must have placed the statutory or constitutional question beyond debate." *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013) (internal quotation marks omitted). A clearly established right must be "'particularized' to the facts of the case" because otherwise, the doctrine of qualified immunity would be transformed "into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 580 U.S. 73, 79 (2017). "Instead, the dispositive question is whether the violative nature of particular conduct is

clearly established." *Kemp*, 877 F.3d at 351 (cleaned up). And to be "clearly established," there must be controlling authority within the relevant jurisdiction, or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

The Seventh Circuit recognizes that "a prisoner has a clearly established right to a diet consistent with his religious scruples." *Thompson*, 809 F.3d at 381 (alterations and quotation marks omitted). But this does not mean that the contours of this right are so broad that prison officials are barred from scrutinizing a religious diet request on a case-by-case basis. *See Holt*, 574 U.S. at 360-61 ("[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation."). After all, "[a] prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself and cause trouble for his captors." *Vinning-El*, 657 F.3d at 594.

Here, the record demonstrates that Gakuba's first request for a religious diet was denied because he failed to provide the information necessary to accommodate it. Gakuba offered no "[j]ustification or basis" for his request, other than to claim that a kosher diet was "axiomatic" to his Jewish faith. He also failed to "provide any examples . . . and omit[ted] the specific requirements of [the requested] diet." These omissions apparently caused Defendants to deny Gakuba's request because they found his religious belief insincere and because he did not explain what a compliant kosher diet included. If anything, the immediate approval of Gakuba's second kosher diet request shows that

Defendants were inclined to accommodate his religious dietary needs if he substantiated his request with information about his beliefs and the types of food his religion demanded. *See id.* (prison official entitled to qualified immunity if he denied religious diet request based on mistaken belief that prisoner's religious belief was not sincere).

Defendants' insistence on certain information about the features of the diet and that Gakuba demonstrate the sincerity of his beliefs was well within the contours of the right to a religious diet. At a minimum, the violative nature of Defendants' conduct here was not clearly established because reasonable scrutiny of the sincerity of a detainee's religious belief was—and remains—fair game under Supreme Court and Seventh Circuit precedent. *Holt*, 574 U.S. at 360-61; *Vinning-El*, 657 F.3d at 594. For that reason, Defendants are entitled to qualified immunity on Gakuba's First Amendment Free Exercise claim. *See McAtee v. Ewing*, No. 18-cv-858-wmc, 2021 WL 3856742, at *10-11 (W.D. Wis. Aug. 30, 2021) (defendants entitled to qualified immunity in religious diet case even if their skepticism about sincerity of plaintiff's religious belief was in error); *Akbar v. Overbo*, No. 17-cv-442-slc, 2019 WL 6699743, at *10 (W.D. Wis. Dec. 9, 2019) (same for defendant who denied plaintiff's request to stop and start religious diet at will).[4]

---

[4] Gakuba also alleges that he was only provided kosher meals "intermittently" after his second kosher meal request was approved. He has offered no evidence—testimonial or otherwise—to support a First Amendment claim on this basis. For instance, the record does not reveal when, how, or why Gakuba only received kosher meals intermittently after his second request was approved. It is well-settled that "the non-moving party must present more than just bare allegations to survive summary judgment. The non-moving party must present evidence on which the jury could reasonably find for the nonmoving party." *Simpson v. Office of Chief Judge of Circuit Ct. of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009) (cleaned up). This evidentiary omission is fatal to a First Amendment claim based on the intermittent provision of kosher meals.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Doc. 133) is **GRANTED**. This entire action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED:  May 28, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**